THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANOVA APPLIED ELECTRONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PRECISION APPLIANCE TECHNOLOGY, INC., <br><br> Defendant. | Case No. 2:22-CV-00042-RAJ <br><br> **ORDER** |

### I.  INTRODUCTION

This matter is before the Court on several pending motions: the parties' joint motion regarding the protective order (Dkt. # 28), Defendant's motion to supplement Docket # 28 (Dkt. # 31), Plaintiff's motion for an extension of time to join additional parties and extend discovery (Dkt. # 32), and Defendant's motion to stay proceedings pending resolution of Defendant's motion for summary judgment (Dkt. # 40). The Court has reviewed the parties' submissions and decided the motions without oral argument. *See* Local Civil Rule (LCR) 7(b)(4).

ORDER - 1

## II. BACKGROUND

Plaintiff Anova Applied Electronics, Inc. ("Anova" or Plaintiff) is a San Francisco-based company that creates smart kitchen appliances. Dkt. # 1, ¶ 6 (Compl.). Plaintiff is suing Defendant Precision Appliance Technology, Inc. ("Precision" or Defendant) for infringement of Plaintiff's Precision Cooker sous vide immersion circulator, covered by U.S. Patent No. D 862,154 (the "D154 patent"). *Id.*, ¶¶ 14, 16. Plaintiff alleges that Defendant advertises, offers for sale, and/or sells the Vesta Precision Sous Vide Immersion Circulator (the "Accused Product") on Amazon to customers throughout the United States. *Id.*

On October 13, 2022, Defendant filed a Motion for Summary Judgment of Non-Infringement, or Alternatively, Invalidity. Dkt. # 35. Defendant argues that the Accused Product does not infringe on the D154 patent, and alternatively, that the D154 patent is invalid in light of Plaintiff's prior art product. *Id.* Defendant's summary judgment motion is under advisement.

## III. DISCUSSION

### a. Motion to Supplement Docket (Dkt. # 31) and LCR 26 Protective Order Dispute (Dkt. # 28)

The parties agree that a protective order should be entered in this case, but jointly request that the Court resolve a dispute concerning access to highly confidential information. Specifically, the parties' dispute concerns the potential designation of Plaintiff's in-house counsel Ray Ashburg with permission to view Defendant's information or items marked "CONFIDENTIAL." Each party submitted proposed protective order language pursuant to LCR 26(c)(2). Dkt. # 28. As an initial matter, the Court **GRANTS** Defendant's unopposed motion to supplement its written arguments filed in response to Plaintiff's "corrected/supplemental" declaration of Mr. Ashburg. Dkt. # 31.

Moving on to the substance of the parties' request, with regard to Section 4.2 of

ORDER - 2

the proposed protective order, Plaintiff proposes the following language:

> "4.2 <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose confidential material only to:
>
> (a) the receiving party's counsel of record in this action, as well as employees of counsel to whom it is reasonably necessary to disclose the information for this litigation;
>
> (b) the officers, directors, and employees (including in house counsel) of the receiving party to whom disclosure is reasonably necessary for this litigation, unless a party designates that a particular document or material produced is for LITIGATION COUNSEL'S EYES ONLY. For the sake of clarity, designation as "LITIGATION COUNSEL'S EYES ONLY" includes Ray Ashburg, Anova's litigation counsel of record in this suit…"

Dkt. # 28-1 (Proposed Protective Order) at 4. Defendant, on the other hand, proposes the following language:

> "4.2 <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose confidential material only to:
>
> (a) the receiving party's counsel of record in this action, as well as employees of counsel to whom it is reasonably necessary to disclose the information for this litigation;
>
> (b) the officers, directors, and employees (including in house counsel) of the receiving party to whom disclosure is reasonably necessary for this litigation, unless a party designates that a particular document or material produced is for Outside Attorney's Eyes Only. For the sake of clarity, designation as "OUTSIDE ATTORNEY'S EYES ONLY" excludes Ray Ashburg…"

*Id.*

Plaintiff argues that Mr. Ashburg, Senior Associate General Counsel and Head of North America IP for Plaintiff's parent company Electrolux, should be permitted to

ORDER - 3

view information that Defendant considers to be for "Outside Counsel's Eyes Only." Dkt. # 28 at 3. According to Mr. Ashburg's Corrected Declaration, he manages and advises on intellectual property-related agreements, including technology and brand licensing agreements, for Electrolux. Dkt. # 30 at 2. He states that he advises on trademark clearances and "filing/prosecution/opposition of trademark applications" for both Electrolux and Anova. *Id.* He is also Anova's counsel of record in this matter. *See* Dkt. ## 9, 10. Further, Mr. Ashburg states that he does not participate in any business or commercial activity at Electrolux or Anova, has no role in forming or assisting any strategic business or commercial decisions at either company, and does not handle patent preparation or patent prosecution for Anova. *Id.* at 4. Plaintiff argues that Mr. Ashburg has no strategic or competitive business decision-making authority, and that if Mr. Ashburg's access to confidential material is prohibited, Plaintiff will be substantially prejudiced because Mr. Ashburg, as counsel of record, has been heavily involved in this case since its filing. Dkt. # 28 at 4. According to Plaintiff, thus far, Defendant has declined to produce confidential information in response to various discovery requests due to this dispute over Mr. Ashburg and has indicated that it will produce responses once a protective order limiting Mr. Ashburg's access to highly confidential information is in place. Dkt. # 30 at 15-19.

Defendant argues that Electrolux, Mr. Ashburg's employer, is a potential competitor of Precision and that to allow counsel to a potential competitor and non-party access to confidential information would create potential for abuse and prejudice Defendant. Dkt. # 28 at 11. Defendant argues that Mr. Ashburg is a competitive decision maker, as evidenced by the responsibilities listed in his online LinkedIn profile. Dkt. # 28 at 11. As of August 2022, Mr. Ashburg's profile indicated that his responsibilities as Associate General Counsel at Electrolux North America included IP litigation, trademarks, technology and brand licensing, and anticounterfeiting. Dkt. # 28, Ex. 1. Defendant argues that his involvement with licensing and IP-related activities constitutes

competitive decision making, such that he should be barred from viewing Defendant's highly confidential materials. Dkt. # 31 at 3.

Under Federal Rule of Civil Procedure 26(c) the Court may, for good cause and with a showing that the parties have conferred in good faith, issue a protective order. Fed. R. Civ. P. 26(c)(1). Further, the Court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including… requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(1)(G). The Court must balance the conflicting interests of the parties when considering protective orders for trade secrets, specifically the risk to Defendant of inadvertent disclosure of trade secrets to competitors against the risk that Plaintiff's prosecution of its claims will be impaired. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). In evaluating the parties' conflicting interests, the Court should look at the parties' "specific factual circumstances." *Id.* at 1471. "In granting a protective order that excludes counsel or others from access to confidential information, the sole question is whether there is an unacceptable risk or opportunity for the inadvertent disclosure of confidential information." *ODS Tech., L.P v. Magna Entm't Corp.*, 583 F.Supp.2d 1141, 1144 (citing *Matsushita Elec. Indus. Co. Ltd. v. U.S.*, 929 F.2d 1577, 1579 (Fed. Cir. 1991)); *Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 407 (N.D. Ill. 2006)). Crucially, the Court must consider whether the proposed designees are engaged in "competitive decision making," because if the designees are engaged in such endeavors, "the risk of disclosure may outweigh the need for confidential information." *Intel Corp. v. Via Tech., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) (citing *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)). "Competitive decision making" is "shorthand for counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's

ORDER - 5

decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Intel*, 198 F.R.D. at 529 (quoting *U.S. Steel*, 730 F.2d at 1468 n.3).

The Court is not persuaded that Mr. Ashburg is in fact a "competitive decision maker" at either Electrolux or Anova. Mr. Ashburg states that he manages and advises only parent company Electrolux (and not Anova) on IP related agreements, Dkt. 30 at 2, and that he does not take part in any commercial or business activity at either Electrolux or Anova. Further, he states that he does not handle patent preparation or patent prosecution for either company. *Id.* at 4. While Defendant attempts to rebut these statements with Mr. Ashburg's LinkedIn profile, the Court has no reason to doubt counsel's averments that he is isolated from competitive business activities. The Court finds Defendant's speculative assertion that Electrolux could be in "future competition" with Precision unpersuasive, especially coupled with Mr. Ashburg's statement that he does not take part in any strategic business or commercial decisions for Electrolux. *See American Standard v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) (noting that "[c]ourts have presumed that disclosure to a *competitor* is more harmful than disclosure to a *noncompetitor*").

While some courts have held that negotiating licensing agreements in litigation constitutes competitive decision making, *see, e.g.*, *Intel Corp. v. VIA Techs, Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (stating, "[in-house counsel's] involvement in licensing through litigation constitutes competitive decision making, because her advice and counsel necessarily affect licensing decisions"), the Court credits Mr. Ashburg's statements indicating his lack of involvement with strategic business and competitive decisions for both entities. And when it comes to Defendant's actual competitor—Anova—Mr. Ashburg maintains a degree of separation, because he has no access to Anova's networks and computer systems. Dkt. # 30 at 3-4. Defendant has not shown that Mr. Ashburg "gives advice or participates in any or all of [Anova's] decisions …

ORDER - 6

made in light of similar or corresponding information about a competitor." *ODS Tech.*, 583 F.Supp.2d at 1144-1145 (quoting *Brown Bag*, 960 F.3d at 1470) (quotations omitted).

Further, the Court agrees that preventing the Mr. Ashburg from accessing highly confidential material "could impair [Plaintiff's] ability to prosecute its claims against defendants…." *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 502 (D. Kan. 2007) (allowing Plaintiff's in-house personnel access to confidential information because preventing access would impair Plaintiff's ability to prosecute claims at the heart of the suit); *see also L-3 Commc'n Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F.Supp.2d 1066, 1092 (D. Colo. 2012) (affirming Magistrate Judge decision to allow current employee access to AEO material because the employee possessed both expertise and factual knowledge, and was "essential to the ability of the plaintiff to prove their case"). Mr. Ashburg has been closely involved in this action since its inception—he indicates that he drafted the complaint alongside Plaintiff's outside counsel—and he states that he will continue to work as Plaintiff's counsel of record. Dkt. #30 at 3. The Court concludes that Plaintiff will suffer prejudice if Mr. Ashburg is denied access to highly confidential information because such information will bear on his advice and counsel to Plaintiff in this litigation. *Javo*, 2020 WL 2062146, at *4 (finding that Plaintiff would suffer "appreciable prejudice" if former general counsel and senior executive vice president of operations not provided access to "Outside Attorneys' Eyes Only" material because access to such information would bear on their advice and counsel).

Plaintiff has also taken additional precautions to protect the confidentiality of sensitive information, such as using a third-party discovery vendor to ensure that no Electrolux or Anova employees have access to Defendant's discovery materials. And while it may not be common to allow in-house counsel provided by a parent company access to Defendant's highly confidential material, it is hardly "unprecedented" in the

ORDER - 7

Ninth Circuit, as Precision asserts. *See Alza Corp. v. Impax Labs., Inc.*, No. C-03-4032VRW, 2004 WL 7339748, at *4-5 (N.D. Cal. June 21, 2004) (allowing in-house counsel of parent company to access confidential information when counsel was not involved in competitive decision making or patent prosecution). The Court finds that the provisions of the protective order, which allow for the use of confidential material only in connection with prosecuting, defending, or settling this litigation, should serve to prevent the "unacceptable risk or opportunity for the inadvertent disclosure of confidential information." *ODS Tech.*, 583 F.Supp.2d at 1144.

If some factual basis to believe that Mr. Ashburg acts as a competitive decision maker for either Anova or Electrolux emerges, Defendant may request a modification of the protective order. *Javo Beverage Co., Inc. v. California Extraction Ventures, Inc.*, No. 19-CV-2062146, 2020 WL 2062146, at *5 (S.D. Cal. Apr. 29, 2020) (noting that Defendant could renew request to prohibit Plaintiff's current outside counsel, who was formerly general counsel, from accessing highly confidential information should Defendant develop a basis to believe that outside counsel was in fact a competitive decision maker). The Court shall issue a Protective Order concurrently with this Order.

### b. Motion for Relief From a Deadline (Dkt. # 32)

Plaintiff seeks to extend the deadline to join Defendant's parent company Guangzhou Argion Electric Appliance Co., Ltd. ("GAEA") as a party to this suit and move the current close of fact discovery from January 10, 2023 to February 24, 2023. Dkt. # 32 at 1. Defendant opposes this request and filed a response. Dkt. # 37. According to Plaintiff, it served Defendant with interrogatories seeking information regarding Defendant's corporate structure, parent companies, and subsidiaries in June 2022. Dkt. # 32 at 2. Defendant objected to providing this information to Mr. Ashburg in particular, leading to the submission of the parties' LCR 26 motion (Dkt. # 28). *Id.* at 3. On September 2, Defendant supplemented its response to the interrogatories and indicated that GAEA is Defendant's sole owner. Dkt. # 33 (Billick Decl.) at ¶ 5. Soon

ORDER - 8

thereafter, this information was shared with Mr. Ashburg. Plaintiff indicates that it has served Defendant with further interrogatories regarding GAEA's relationship to the Accused Product. *Id.* at ¶ 5.

Defendant argues that its Rule 7.1 disclosure statement, filed months prior in March 2022, alerted Plaintiff to the fact that it is a subsidiary of GAEA. Dkt. # 18. Further, the deadline to join additional parties passed on July 22, and Defendant's responses to Plaintiff's interrogatories concerning Defendant's parent company were not due until August 1. Dkt. # 37 at 2. Instead, Plaintiff waited until mid-September to seek further discovery concerning GAEA and until October to request a modification of long-set deadlines. *Id.* at 3. Defendant argues that extending the deadline to join GAEA at this point is not only prejudicial to Anova, but would also extend the case by at least ten months due to the time it would take Plaintiff to serve China-based GAEA via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. Dkt. # 37 at 5-6. In any event, Defendant states that GAEA is not involved with activities related to the Accused Product in the United States and does not benefit from sales of the product. *Id.* at 6. Plaintiff responds that it did in fact move diligently, and that Defendant only stated that it was a *subsidiary* of GAEA in its corporate disclosure statement, without mentioning that Anova is *wholly owned* by GAEA. Dkt. # 38 at 2.

"[A] schedule shall not be modified except upon a showing of good cause and by leave of the district judge…" Fed. R. Civ. P. 16(b). "Mere failure to complete discovery within the timeframe allowed does not constitute good cause for an extension or continuance." LCR 16(b)(6). On April 22, 2022, this Court ordered that any additional parties to this action were to be joined by July 22, 2022. Dkt. # 26. Based on Defendant's Corporate Disclosure Statement, Plaintiff was aware that Precision is a subsidiary of GAEA since at least March 16, 2022 and yet Plaintiff waited until the July 22 deadline had passed to seek leave from this Court to join GAEA as a party. Plaintiff's failure to complete necessary discovery within the time allowed does not

ORDER - 9

constitute "good cause" to extend the deadline, especially given that Plaintiff waited until well after the deadline passed to seek an extension. While Plaintiff claims that it cannot take Defendant's statements as to GAEA's lack of involvement with the Accused Product at face value, "]p]atent infringement activities ordinarily cannot be imputed from one company to its parent, subsidiaries, or sister companies." *Free-Free Indus. Corp. v. First Design Global*, No. EDCV 19-2462-GW-KESx, 2020 WL 7016676, at *2 (C.D. Cal. Aug. 31, 2020). That means that even if Defendant is found to have infringed on Plaintiff's patent, liability would not ordinarily be imputed to GAEA. Given this, Plaintiff has not shown good cause to modify the deadline to join additional parties, and the Court **DENIES** Plaintiff's motion to extend the deadline to join GAEA as a party. However, given the delay potentially caused by the disagreement over the extent of Mr. Ashburg's access to confidential materials produced in discovery, the Court **GRANTS** Plaintiff's request to extend the deadline for fact discovery to February 24, 2023.

### c. Motion to Stay Proceedings (Dkt. # 40)

Defendant seeks an order staying the proceedings pending resolution of Defendant's pending summary judgment motion and a protective order from a 30(b)(6) deposition notice served by Plaintiff. Dkt. # 40. Defendant argues that the pending summary judgment motion is dispositive of the entire case and regardless of whether the Court decides that Plaintiff's patent was (1) not infringed, (2) invalid, or (3) both, the outcome will be dispositive of Plaintiff's claim. *Id.* at 4. Defendant further argues that the summary judgment motion is dispositive as to the issues on which Defendant currently seeks duplicative discovery and that the motion can be decided without further discovery on Plaintiff's part. *Id.* at 4-5. Defendant objects to the 30(b)(6) deposition notice because it seeks discovery on already fully-investigated issues of non-infringement and invalidity and other non-relevant topics, such as Defendant's process of selecting the name "Precision" for its company. *Id.* at 7-8.

ORDER - 10

Plaintiff counters that expert discovery is currently underway and Plaintiff expects that the resulting testimony will shed light on Defendant's arguments concerning non-infringement and invalidity. Dkt. # 49 at 9-10. Additionally, Plaintiff states that it is currently seeking discovery regarding the development and marketing of the Accused Product and consumer perceptions of the design of the Accused Product, which Plaintiff argues is relevant to the issue of infringement. *Id.* at 12.

"Under Federal Rule of Civil Procedure 26(c), district courts, upon a showing of 'good cause,' have broad discretion in determining whether to stay discovery pending the resolution of a potentially dispositive motion." *Ziegler v. Hotel California by the Sea, LLC*, No. C21-1702-TL-SKV, 2022 WL 1499670, at *2 (W.D. Wash. May 12, 2022) (citing *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)). The Court must consider two factors in deciding whether to grant a stay: "First, the pending motion must be potentially dispositive of the entire case, at least on the issue to which discovery is directed. Second, the court must determine if the pending dispositive motion can be decided without additional discovery." *Ahern Rentals, Inc. v. Mendenhall*, C20-0542-JCC, 2020 WL 8678084, *1 (W.D. Wash. July 9, 2020) (citations omitted). However, to "relieve a party of the burdens of discovery while a dispositive motion is pending… is the exception and not the rule." *Ziegler*, 2022 WL 1499670, at *2 (quoting *White v. Skagit Bonded Collectors, LLC*, No. C21-0697-LK, 2022 WL 508825, at *1 (W.D. Wash. Jan 24, 2022). The Court declines to make this case an exception.

The Court finds that Defendant has not demonstrated the requisite good cause to stay discovery. Without prejudging the merits of Defendant's motion, the Court finds that while the pending summary judgment motion may indeed be dispositive, to stay discovery at this point could prevent Plaintiff from "present[ing] facts essential to justify its opposition" to summary judgment. Fed. R. Civ. P. 56(d). Summary judgment is generally "only appropriate after a nonmovant has had adequate time for discovery."

ORDER - 11

*Baca v. Biter*, No. 1:15cv1916-DAD-HBK (PC), 2021 WL 1130794, at *5 (E.D. Cal. Mar. 24, 2021). Under the current case schedule fact discovery is due to close on January 10, 2023, expert discovery closes on April 28, and the deadline to file dispositive or *Daubert* motions is May 31. Ongoing fact discovery, particularly expert discovery, is fertile ground for investigation and may provide information of relevance to Plaintiff's defense of the summary judgment motion. "Dispositive motions are not an absolute reason to stall discovery." *United States v. Bayley*, No. 3:20-cv-05867-DGE, 2022 WL 1014993, *10 (W.D. Wash. Apr. 5, 2022). This is particularly true considering the recent delays in discovery concerning access to confidential documents by Mr. Ashburg. *See supra* Part III(a). Additionally, ordering a stay would not necessarily conserve judicial resources. Should Defendant's summary judgment motion be denied, it would then likely be necessary to extend the parties' discovery deadlines, which would impact the remaining dates on the case schedule. Because the Court will not stay discovery, the Court also declines to issue a protective order from Plaintiff's 30(b)(6) deposition notice and declines Plaintiff's invitation to issue a sanction against Defendant. The Court **DENIES** Plaintiff's motion to stay proceedings and for a protective order from Plaintiff's 30(b)(6) notice.

//
//
//
//
//
//
//
//
//
//

ORDER - 12

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's request concerning the draft protective order and issues a protective order concurrently with this Order. Dkt. # 28. The Court **GRANTS** Defendant's unopposed motion to supplement Dkt. # 28. Dkt. # 31. The Court **DENIES in part** and **GRANTS in part** Plaintiff's motion for relief from a deadline. Dkt. # 32. The Court **DENIES** Defendant's motion to stay discovery and for a protective order. Dkt. #40.

DATED this 30th day of November, 2022.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge